NELSON P. COHEN
United States Attorney

CRANDON RANDELL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
email: crandon.randell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-0052-TMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Response to Motion to Exclude** |
| | ) | **Breath Test Evidence** |
| JOSE L. MONTEZ, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW plaintiff United States of America, by and through counsel, and hereby submits this Response to defendant's motion to exclude Breath Test Evidence, or, in the alternative, request for *Daubert* Hearing.

Facts

Defendant is charged with driving under the Influence of Alcohol, which resulted in defendant cracking up a fire truck on the remote Aleutian Island of

Shemya,[1] in violation of 18 U.S.C. § 13(a); 18 U.S.C. § 7(3); AS 28.35.030. The violation is alleged to have occurred on March 26, 2006.

Shemya Island is the site of a United States Air Force base – the Eareckson Air Station. The Air Force contracts with Chugach McKinley, Inc., to provide and supply essential functions for the base, such as power, security, food service, billeting, and Fire Protection, etc. The professional Fire Department is staffed by approximately 30 firefighters, including two assistant fire chiefs, and the fire chief. As conditions of their employment, fire fighter employees agree that they will submit to drug/alcohol testing in any job related "post accident" situation.

After forcefully maneuvering the fire truck into a rather large concrete structure, at about 9:30 a.m., defendant and his two co-workers reported the incident. Within approximately two hours defendant reported to the base clinic to take his mandatory and agreed upon breathalyser test.[2] At 11:29 a.m., defendant blew a 0.100. After the following of rigid testing procedures, defendant presented another air sample at 11:47 a.m. This time defendant blew a 0.089. These results were duly recorded on the Alcohol Testing Form employed by the clinic, and

---

[1] The fire truck has been out of service ever since the incident, and had to be air lifted off the island for repair.

[2] The clinic was managed by <u>Beacon Occupational Health and Safety Services</u>, a company contracted for health services by Chugach McKinley.

produced to the defendant in Discovery.

"Approved Methods"

Alaska State law allows admission into evidence breathalyser evidence "if it is established at trial that a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods, and standards of training approved by the Department of Public Safety, . . ." AS § 28.35.033(d).  In addition, should this foundation be successfully established, there will exist "a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary." *Id*.

To assist in making a determination of "approved methods", the jury will be supplied with (<u>as has the defendant</u>) with:

1. A *Certificate of Completion*, dated October 25, 2005, attesting to the fact that the operator of the breathalyser in this case (the ALCO SENSOR IV / RBT IV) had successfully completed the curriculum specified by Intoximeters, Inc. [the manufacturer] to merit the title ***Factory Authorized Calibration Technician***;

2. A Certificate of Completion, dated October 25, 2005, issued by BEACON Occupational Health and Safety Services, certifying that the operator of the breathalyser in this case had successfully completed the curriculum specified by

the [federal] Department of Transportation (DOT) . . . for certification as ***Breath Alcohol Technician (BAT)***;[3]

3. One page from the machine calibration logbook showing machine calibration test dates, times, technicians, location [Shemya], expected values, and results. This exhibit shows calibration tests conducted on March 21, 2006, as well as on March 26, 2006, in conjunction with defendant's second breath sample, when he weighed in with the 0.089 result;

4. Twelve (12) pages from the machine Operation and Instruction Manuel giving detailed instructions on subjects such as:

> (a) Conducting a Subject Test;
>
> (b) Preconditions for Conducting a Test;
>
> (c) Preparing the Instrument for a Subject Test;
>
> (d) Preparing the Subject for a Test;
>
> (e) Performing a Screen & Confirmation Test - Step by Step;
>
> (f) Performing a Confirmation Only Test - Step by Step;
>
> (g) Accuracy Check Methods;
>
> (h) Accuracy Check Intervals;

---

[3] *See* 49 CFR Part 40 procedures.

>       (i) Accuracy Check Tolerances; and
>
>       (j) Inspection and Routine Maintenance.

The Law

In spite of what has to date been provided to the defense, and outlined in this response, defendant maintains that the "government has yet to produce sufficient information to justify a determination that the breath test results meet the threshold requirements of Fed. R. Evid. 702, *Daubert,* or *Kumho Tire*." Defendant motion, pg. 6.  Untrue.

Rule 702 concerns Testimony by Experts.  The government, in a case of this nature, will be calling an expert to discuss concepts such as, for example, the <u>meaning</u> of a 0.10 and 0.89 blood alcohol level, how a ordinary human being ascends to these alcohol levels, how long it takes to get there, and how long it takes to descend from these levels into a state of relative sobriety.  Notice of this expert will be provided to defendant in a timely manner.

Defendant presents a knowledgeable – and insightful – analysis of <u>Daubert v. Merrell Dow Pharmaceuticals,</u> 509 U.S. 579 (1993).  What defendant does <u>not</u> offer the court is any case, in any federal or state jurisdiction, wherein a standard and ordinary drunk driving breathalyser test has been the subject of a *Daubert* hearing.  Ever. Such tests, and their reliability, have been conducted and admitted

into evidence in criminal trials for . . . decades.

## A Red Herring

Defendant tosses a red herring into his brief when he states that Alaska law requires defendant to be advised of his option to obtain "an additional independent test." Defendant Motion, pg 5; AS 28.35.033(e). Well, yes. The problem is that the Alaska statute considers the notion of an "independent test" when the original test is "administered at the direction of a law enforcement officer." Here, defendant was not stopped, detained, or arrested by a "law enforcement officer."

The remote and wind-swept island of Shemya is home to no state employed law enforcement officers. Shemya is federal territory, and administered by federal contractors. Defendant was stopped and detained, as will be proven at trial, by his employment agreement. In addition, the evidence at trial will show that there was no where to go . . . no one to see, with respect to an independent test. The nearest independent test was many hours – and, necessarily, time-induced sobriety – away.

## Summary

This motion has no merit. The government has produced to defendant the materials necessary to contest the findings and conclusions to be presented by the government in support of the charge that defendant was under the influence of alcohol when he wrapped his fire truck around a solidly and long-time entrenched

concrete structure.

    RESPECTFULLY SUBMITTED this 10th day of October, 2006, at

Anchorage, Alaska.

        NELSON P. COHEN
        United States Attorney

        s/ Crandon Randell
        Assistant U.S. Attorney
        Federal Building & U.S. Courthouse
        222 West Seventh Avenue, #9, Room 253
        Anchorage, Alaska  99513-7567
        Phone: (907) 271-5071
        Fax: (907) 271-1500
        E-mail: crandon.randell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2006
a copy of the foregoing was served electronically on:

Kevin McCoy
Peter Kezar

s/ Crandon Randell