Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JOSE L. MONTEZ,<br><br>　　　　　　　Defendant. | Case No. 3:06-cr-0052-TMB<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF *IN LIMINE* MOTION TO EXCLUDE BREATH TEST RESULTS** |

**I.　　Introduction.**

　　　　The government has charged Jose L. Montez with driving while under the influence of alcohol. At trial, the government will seek to introduce two breath test results from Mr. Montez obtained using a portable breath testing device called the Alco Sensor IV/RBT IV.[1]  AS 28.35.033(a)(3) sets forth a presumption which the government intends to rely on at trial. This statute provides:

> If there was 0.08 percent or more by weight of alcohol in the person's blood per 100 milliliters of the person's blood, or 0.08 grams of

---

[1] RBT is short hand for roadside breath test.

alcohol per 210 liters of the person's breath, it shall be presumed that
the person was under the influence of alcohol.

Tests administered to Mr. Montez using the portable Alco Sensor IV/RBT IV roadside breath testing device on March 26, 2006, yielded a 0.10 result at 11:29 a.m. and a 0.089 result at 11:47 a.m. The government will ask that Mr. Montez's jury be instructed about the presumption contained in AS 28.35.030(a)(3) and will argue that he was guilty of the charge contained in the information because the test results establish that he was under the influence of alcohol.

Mr. Montez opposes admission of this evidence for two reasons.

First, the test results are inadmissible because the portable breath test in this case was not performed according to methods approved by the Alaska Department of Public Safety by a person trained according to techniques, methods, and standards of training approved by the Department of Public Safety and because Mr. Montez was not informed of his right to an independent test.

Second, the test results are inadmissible because portable breath testing devices are not sufficiently reliable to be admitted pursuant to Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

II. **The Breath Test Results In This Case Are Inadmissible Because The Testing Procedure Wholly Failed To Comply With AS 28.35.033.**

The breath test results in this case are inadmissible because the testing employed failed to comply with the reliability provisions in AS 28.35.033. Testing requirements include use of a breath testing device certified by the Department of Public Safety, operated by a person certified

as properly trained by the Department of Public Safety, and as a further guarantee of reliability, advice to the person being tested of his or her right to an independent test. Because the breath tests in this case failed to meet any of these requirements, the motion *in limine* should be granted.

As demonstrated at the outset, AS 28.35.033 presumes that a person is under the influence of alcohol if he or she has 0.08 percent or more by weight of alcohol in the person's blood per 100 milliliters of blood, or 0.08 grams of alcohol per 210 liters of breath.

However, AS 28.35.033(d) provides:

> To be considered valid under the provisions of this section the chemical analysis of the person's breath or blood shall have been performed according to methods approved by the Department of Public Safety. The Department of Public Safety is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of the breath or blood was performed according to the approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Public Safety, there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

The portable breath testing device in this case was not approved by the Department of Public Safety. Indeed, the only breath testing device approved by the Department of Public Safety is the Datamaster cdm. *See* Exhibit A (Breath Test Device Approved by Chris Beheim, Scientific Director for the Department of Public Safety), *see also* 13 AAC 63.020 (requiring the Scientific Director for the Department of Public Safety to approve breath testing instruments).

The person administering the breath tests in this case was not trained according to the techniques, methods and standards approved by the Department of Public Safety. 13 AAC 63.050 requires that the operator of the breath testing equipment be certified by the Department of Public

Safety and provide that an operator certificate and operator identification number be assigned to the breath testing equipment operator. Needless to say, the Director has not issued the required certificate or certificate number to the person who administered the breath tests in this case.

Moreover, before the jury can be informed about the presumption set forth in AS 28.35.033(3), subsection (e) establishes a right to an independent test performed by "a physician, or a qualified technician, chemist, registered nurse, or other qualified person." To meaningful effect the right to an independent test this subsection further requires:

> The person who administers the chemical test shall clearly and expressly inform the person tested of that person's right to an independent test described under this subsection, and, if the person being tested requests an independent test, the department shall make reasonable and good faith efforts to assist the person being tested in contacting a person qualified to perform an independent test of the person's breath or blood.

Failure to advise the individual of his or her right to an independent test precludes admission of the breath test results and advisement of the presumptions flowing therefrom under AS 28.35.033. *Cf. Ahtuangaruak v. State*, 820 P.2d 310, 311 (Ak.App. 1991) (holding that suppression of the defendant's breath test results was warranted because the defendant's English was so poor that he could not make a knowing and intelligent decision regarding his right to an independent test).

In this instance, none of the reliability requirements set forth in AS 28.35.033 have been met. Consequently, the presumptions in AS 28.35.033 cannot be assimilated and the motion *in limine* must be granted.

**III.   The Breath Test Results From The Portable Breath Testing Device In This Matter Are Not Reliable And Cannot Be Admitted Under Fed.R.Evid. 702 And *Daubert v. Merrill Dow Pharmaceuticals, Inc*.**

   **A.   Introduction.**

The admissibility of the proffered breath test results in this matter represents a case of first impression in this district under Fed.R.Evid. 702. This is because Congress amended Rule 702 in 2000. The amended rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand that evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The amendment responded to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and to the many cases applying *Daubert*, including, *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999). The amended rule endorsed the trial court's responsibility as "gatekeeper" to exclude unreliable expert testimony and affirmed the *Kumho Tire* holding that the gatekeeper function applies to all expert testimony, not just scientific testimony.

The *Daubert* court offered five factors for consideration when evaluating the admissibility of proffered expert testimony.

- Whether the theory or technique can be and has been tested – that is whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach which cannot reasonably be assessed for reliability;

- Whether the theory or technique has been subjected to peer review and publication;

- Whether a known or potential error rate of the technique or theory as applied has been established;

- Whether standards are in place for controlling operation of the technique;

- Whether the theory or technique at issue enjoys general acceptance within the relevant community.

The extensive Advisory Committee notes which accompanied the 2000 Amendments of Fed.R.Evid. 702 supplemented these factors with five additional factors which are relevant to determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. The additional factors include the following:

- Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for the purposes of testifying;

- Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

- Whether the expert has adequately accounted for obvious alternative conclusions;

- Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

- Whether the field of expertise claimed by the expert is known to reach reliable results.

Commentary to 2000 Amendments to Fed.R.Evid. 702.

In the final analysis, proper application of the newly amended Rule 702 must be informed by the analysis endorsed in *Daubert* and in *Kumho Tire*. Ultimately, all Rule 702 questions center on the demonstrable reliability of the proffered evidence.

**B.      The Government's Response To Mr. Montez's Fed.R.Crim.P. 16(a)(1)(G) Expert Discovery Request Fails To Provide A Basis For The *Daubert* Hearing.**

Fed.R.Crim.P. 16(a)(1)(G) requires the government, upon request, to provide the defense with a written summary of expert testimony it intends to present in connection with the prosecution. The written summary must include a statement of the expert witness's opinions and the basis and reasons for those expert opinions. The rationale for the rule is self-evident – to inform the court of the opinions to be offered and to enable that defendant to exercise his or her right to confrontation and compulsory process with regard to the anticipated opinions. The notice of expert witness supplied in this case wholly fails to comply with the requirements of the rule because if fails to identify any of the opinions or bases for the opinions that will be offered at the *Daubert* hearing.

This prosecution was initiated on June 6, 2006. *See* Docket No. 1. Counsel was appointed for Mr. Montez on August 14, 2006. *See* Docket No. 8. Mr. Montez made a written request for discovery pursuant to Fed.R.Crim.P. 16(a)(1)(G) on September 11, 2006, and has been renewing his request periodically since that time.

On October 2, 2006, Mr. Montez filed an *in limine* motion challenging the admissibility of the breath test results in this case. *See* Docket No. 25. Thereafter, on October 11, 2006, the government referenced expert testimony for the first time and promised that notice of its expert would be provided to Mr. Montez "in a timely manner." *See* Docket No. 38, pg 5.

The notice ultimately supplied on October 19, 2006, identified the expert, stated his qualifications, but completely failed to reveal what opinions would be given much less the bases for the opinions. *See* Exhibit B (Notice of Intent to Call Anchorage Police Officer Donald Mann).

Indeed, the notice of anticipated testimony fails even to reference the portable breath testing device at issue at the *Daubert* hearing in this case.

Under these circumstances, the government should be precluded from calling Officer Mann at the *Daubert* Hearing.[2]

### C. Courts Have Found That Portable Breath Testing Devices Are Unreliable And Have Refused To Admit Test Results From Portable Breath Testing Devices.

Regardless, portable breath test devices are unreliable and courts applying *Daubert* standards have repeatedly ruled that breath test results from such devices are inadmissible for anything more than confirming probable cause. In *United States v. Iron Cloud*, 171 F.3d 587 (8th Cir. 1999), the defendant's vehicular manslaughter conviction was reversed because the trial court refused to conduct a *Daubert* hearing on the admissibility of test results from a portable breath test. The court explained:

> By denying Iron Cloud's request for a *Daubert* hearing on the reliability of the PBT, the judge took the accuracy of PBT's for granted and he ignored established procedure. Contrary to the court's statements concerning the reliability of the PBT, the PBT has not been established as reliable. PBT's are used in the field for screening purposes. The government's expert witness, Roger Mathison, agreed the PBT was only a preliminary screening test. Furthermore, almost every state that has addressed the issue has refused to admit the results of the test for purpose other than probable cause. Although the admissibility of evidence is governed by federal standards, in the face of this overwhelming case law as to the limited reliability of the PBT, we conclude, without further foundation being laid, that the PBT is not reliable as anything more than a screening test to be used for probable cause.

---

[2] Because the government's notice of expert witness is so uninformative, Mr. Montez has yet to determine whether he should consult with an expert witness of his own choosing to give proper effect to his Sixth Amendment right to compulsory process on the *Daubert* motion.

(Footnotes and record citations omitted). Footnote 5 in the *Iron Cloud* opinion identified 15 state court opinions ruling that PBT test results are inadmissible at trial.

The State of Alaska has now joined this list. In *Guerre-Chaley v. State*, 88 P.3d 539 (Alaska App. 2004), the court of appeals affirmed a trial court's decision not to admit the breath test results from a portable breath testing device. The Alaska court referenced the *Iron Cloud* opinion noting overwhelming authority against admission of PBT test results and then explained:

> In Alaska, the use of the preliminary breath test is even more limited: a police officer can not require a motorist to submit to the preliminary breath test until *after* the officer has probable cause to believe that the motorist is driving while intoxicated. *Leslie v. State*, 711 P.2d 575, 577 (Alaska App. 1986), construing AS 28.35.031(b).
>
> Against this legal backdrop, we conclude that Judge Funk did not abuse his discretion when he required Guerre-Chaley to establish the admissibility of preliminary breath test results under the *Daubert-Coon* rule before he would allow Guerre-Chaley to offer expert testimony that relied on those results.

*Id.* at 544.

Under these circumstances, road side portable breath testing equipment cannot be considered reliable and its test results cannot be admitted at trial. This is because the government has not satisfied the threshold admissibility requirements of Fed.R.Evid. 702 and *Daubert*.

### IV.    Conclusion.

For all these reasons, Mr. Montez asks that his *in limine* motion to exclude the breath test results in this case be granted.

DATED at Anchorage, Alaska this 24th day of October 2006.

Respectfully submitted,

s/Kevin F. McCoy
Assistant Federal Defender
Alaska Bar No. 7705042
601 West Fifth Avenue, Suite 800
Anchorage, AK 99501
Phone:          907-646-3400
Fax:            907-646-3480
E-Mail:         kevin_mccoy@fd.org

Certification:
I certify that on October 24, 2006,
a copy of the *Supplemental Memorandum in Support of In Limine Motion to Exclude Breath Test Results* was served electronically on:

Captain Peter Kezar
3WG/JA
8517 20th Street, Suite 330
Elmendorf AFB, AK 99506

Crandon Randell
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

s/Kevin F. McCoy